# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1690
_____

TERRY L. MARSHALL, III,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Tatiana Salvador, Judge.

August 13, 2019

PER CURIAM.

Terry L. Marshall, III, appeals an order denying a motion brought pursuant to Florida Rule of Criminal Procedure 3.850. For the reasons discussed below, we affirm.

Marshall was tried for armed robbery with a firearm. The victim and his mother testified for the State. Those witnesses testified that the victim and Marshall were friends from college. Marshall used to push the victim around in his wheelchair when the victim was wheelchair-bound in 2011. At the time of the offense in 2013, the victim was able to walk with the assistance of a walker. He was living in an apartment with his mother and his three-month-old daughter.

On the day of the offense, Marshall called the victim and asked to visit. Marshall arrived with a man he introduced as his cousin. The victim's mother let the two men into the apartment, and they joined the victim in the living room, where he was watching television with his daughter on his lap. The victim's mother stepped outside to smoke a cigarette.

Marshall asked the victim for ten dollars. When the victim declined, Marshall pulled a gun, cocked it, and pointed it at the victim's head. The victim pleaded, "[P]lease don't shoot me, not while I got my baby." Marshall took money from the victim's pockets. Marshall's cousin searched the other rooms, taking money that the victim's mother kept on the refrigerator. Overhearing the commotion, the victim's mother rushed back into the apartment. She saw Marshall pointing a gun at the victim and his baby and shielded them with her body. As Marshall left the apartment, he stopped in the door, the gun still pointed at the victim, and said, "You know my name."

The victim was so upset afterwards that he became physically ill and had to calm down before he could call 911. The victim and his mother separately identified a photograph of Marshall for the police. They both also identified Marshall in court.

The defense theory was that the victim had fabricated the robbery to seek revenge against Marshall for testifying against the victim's friend, Tim Burrows. During cross-examination, defense counsel elicited testimony from the victim that he knew Burrows. Counsel impeached the victim with prior inconsistent statements from his deposition that he did not know Burrows.

Defense counsel also called Burrows as a witness. Burrows testified that Marshall had been his codefendant in a criminal case. Marshall cooperated with the State and was released sooner than Burrows, who was still incarcerated at the time of trial. Burrows testified that he grew up with the victim, who was like a brother to him. He stated that it was the victim who introduced him to Marshall.

Before cross-examination, the State proffered evidence regarding the nature of the charges in Burrows' prior criminal

2

case. Defense counsel objected to this testimony, arguing that the nature of the charges would be too prejudicial because the prior case involved a robbery. Counsel noted that he had filed a motion in limine on this issue, which the trial judge had reserved ruling on. The State argued that defense counsel had opened the door to this line of questioning by eliciting testimony about the prior criminal case. The trial judge ruled that the State could ask Burrows what offenses he had been convicted of in that prior case.

Burrows then testified that after Marshall became a witness against him, he pled nolo contendere to two counts of robbery, battery on a law enforcement officer, and two counts of battery on a detainee. Burrows indicated that he was sentenced to one year in the county jail as a result.

The jury found Marshall guilty as charged. His conviction and sentence were affirmed on appeal. *See Marshall v. State*, 166 So. 3d 772 (Fla. 1st DCA 2015).

Marshall later moved for postconviction relief, raising five claims of ineffective assistance of counsel. The trial court ultimately denied all five claims.

Marshall argues that the trial court erred by denying his claim that his attorney performed deficiently by advising him not to testify to prevent the disclosure of his criminal history when counsel ultimately opened the door to his criminal history through his questioning of Burrows. Marshall asserts that the trial court erred in finding that he voluntarily agreed with counsel not to testify and in determining that his proposed testimony would not have changed the outcome of the trial, as it would have supported a conviction for the lesser-included offense of theft.

While Marshall's brief refers to grounds one, two, and five, he raises no argument specifically concerning counsel's deficiency in questioning Burrows in a manner that opened the door to his criminal history, as raised below in ground one, or counsel's failure to advise him that the defense theory would result in the disclosure of his criminal record, as raised below in ground five. Rather, his brief focuses solely on the effect of counsel's advice on Marshall's decision not to testify, which was the claim raised below in ground

3

two. Therefore, appellate review of all other grounds has been waived. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008).

"Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Beasley v. State*, 18 So. 3d 473, 495 (Fla. 2009) (quoting *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992)). The first question for determining ineffective assistance of counsel in this context is whether the defendant voluntarily agreed with counsel not to take the stand. *Hayes v. State*, 79 So. 3d 230, 231 (Fla. 2d DCA 2012). If that is established, the second question is whether, despite the waiver, the advice was still deficient because no reasonable attorney would have discouraged the defendant from taking the stand. *Id.* To show prejudice, the movant must show that he would have proceeded differently if he had been properly advised. *Rolon v. State*, 72 So. 3d 238, 243 (Fla. 2d DCA 2011). The movant must also set forth what his testimony would have been and how that testimony would have created a reasonable probability of a different outcome. *See Cole v. State*, 89 So. 3d 993, 995 (Fla. 2d DCA 2012).

Here, the trial court conducted a colloquy regarding Marshall's decision to testify. Marshall indicated that it was his decision not to testify in his own defense and no one had threatened or coerced him to influence his decision. Thus, Marshall voluntarily chose not to testify. Additionally, Marshall indicated that he was aware that Burrows would be the only witness called in his case and he agreed with that decision.

Furthermore, Marshall's attorney did not interfere with his ability to voluntarily make this decision by misadvising him regarding the law. Marshall's prior convictions were not admissible unless he testified in his own defense. *See* § 90.610(1), Fla. Stat. Even then, only the number of the prior convictions would have been admissible so long as Marshall testified honestly to that number. *See Gavins v. State*, 587 So. 2d 487, 489-90 (Fla. 1st DCA 1991).

4

Marshall also suggests that counsel had a duty to advise him that Burrows' testimony would open the door to testimony regarding his prior convictions. However, at the time counsel advised Marshall not to testify, it was unclear whether evidence of the nature of the previous criminal case would be admitted. Counsel had filed a motion in limine to keep that evidence out, and the trial court had reserved ruling on the motion. After the colloquy regarding Marshall's decision to testify and the State's proffered cross-examination of Burrows, counsel argued at length that questioning regarding the nature of the prior criminal case would only prove propensity and would be unfairly prejudicial. The trial judge expressed concerns about whether the proffered questioning of Burrows would be probative of anything other than propensity and questioned the State on this matter. Ultimately, the judge limited the State to asking what Burrows was convicted of in the prior criminal case. Consistent with that ruling, Burrows testified regarding his own convictions in that case and not Marshall's convictions. Thus, any advice by counsel that Burrows' testimony would result in the introduction of testimony regarding Marshall's prior convictions would have been incorrect.

Regardless, as to the second inquiry, it cannot be said that no reasonable attorney would have discouraged Marshall from taking the stand. During Marshall's sentencing hearing, two separate judgments reflecting separate conviction of robbery were entered into evidence to support the habitual violent felony offender designation. Thus, if Marshall had testified, the jury would have learned that he had two prior felony convictions. Additionally, Marshall's proposed testimony would not have changed the outcome of the trial. Marshall alleged that he could have testified that he stole a gun from the victim, not money, and only because the victim had refused to pay back a loan. This would not provide a defense to robbery. A claim of right defense does not apply to robbery charges arising from the use of force to take property from the victim to satisfy a disputed debt. *See Thomas v. State*, 584 So. 2d 1022, 1025-26 (Fla. 1st DCA 1991). It should also be noted that a forceful taking of the victim's firearm would still constitute an armed robbery. *See* § 812.13(2)(a), Fla. Stat. (2013).

Furthermore, Marshall also claims that he would have testified that the victim fabricated the robbery to get back at

Marshall for testifying against the victim's friend. This is the same information suggested by Burrows' testimony and still would have risked the cross-examination discussed above. Marshall also identifies no specific reason that the jury would have accepted the same defense theory it ultimately rejected if he had testified in his own defense. Nor does he address how his proposed testimony that the victim fabricated the robbery conflicts with his proposed testimony that he did steal a gun from the victim, but only because it was owed to him. Under these circumstances, this claim was properly denied on the merits.

B.L. THOMAS, WINOKUR, and JAY, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Terry L. Marshall, III, pro se, Appellant.

Ashley Moody, Attorney General, and Anne C. Conley, Assistant Attorney General, Tallahassee, for Appellee.